DONOGHUE v. CITY OF YONKERS.

(Supreme Court, Special Term, Westchester County.   June 1, 1910.)

1. MUNICIPAL CORPORATIONS (§ 214*)—CITY CHARTER—EMPLOYMENT OF SERVANTS—AUTHORITY.

Under Yonkers City Charter, tit. 6, § 6, subd. 6, giving to the city council power to provide for the care, custody, and preservation of the public property, records, and papers, and subdivision 38, authorizing the council to cause the boundaries of the city to be surveyed and maps thereof to be made, the council had power to appoint a suitable person to replace and repair the original maps and surveys of the city streets, etc., either di-

rectly, or to authorize the appointment and employment of such a' person by the mayor, or by a committee of the council.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. §§ 582, 588; Dec. Dig. § 214.*]

2. MUNICIPAL CORPORATIONS (§ 214*)—EMPLOYMENT OF SERVANTS—AUTHORITY—RESOLUTIONS.

Where a resolution of a city council provided that the mayor be empowered to have the files of maps in the office of the city clerk replaced where missing and repaired where necessary, and the expense paid out of the current expense account, the mayor had authority to employ an engineer to do such work, the employment to terminate at any time in accordance with the mayor's discretion.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. §§ 582, 588; Dec. Dig. § 214.*]

Action by Francis X. Donoghue, as executor of the will of Carl E. Von Leliva, deceased, against the City of Yonkers. Judgment for plaintiff.

Francis X. Donoghue, pro se.
Thomas F. Curran, for defendant.

TOMPKINS, J. The conceded facts in this case are that prior to December 1, 1905, Carl E. Von Leliva was employed as a civil engineer and draughtsman by the city of Yonkers, for the preparation and alteration of maps in the office of the board of assessors in said city, and in assisting said assessors in the performance of their duties in apportioning taxes, and other work. He was selected to do this work by the mayor, pursuant to the two following resolutions of the common council of said city:

First:

"Resolved, that the mayor be and is hereby authorized to have such alterations made to the city maps as may from time to time be necessary."

This resolution was adopted by the common council and approved by the mayor in April, 1894.

Second:

"Whereas, by reference to the files of maps in the city clerk's office, it will be found that some of the maps for street improvements, etc., are missing, and some are in bad repair; and

"Whereas, the engineers who made some of the missing maps are still in Yonkers, and have the original maps and surveys in their possession; therefore be it

"Resolved, that his honor, the mayor, be empowered to have the files of maps in the office of the city clerk replaced where missing, repaired where necessary, and the expense thereof to be paid out of the current expense account."

This resolution was approved by the mayor on the 4th day of June, 1896, and subsequently the compensation of said Von Leliva was fixed by the common council of said city of Yonkers at the sum of $250 per month. He continued in the service of said city, under said resolutions and the appointment of the mayor, until September 1, 1907, and down to that date performed the services for which he was appointed, and was paid for his services the sum of $250 per month

down to the 1st day of December, 1905, and was not paid for any services rendered after that date.

On or about December 12, 1905, a notice was served upon said Von Leliva by the then mayor of the city of Yonkers, which read as follows:

"Whereas, by resolution of the common council adopted April 17, 1894, and approved April 18, 1894, and by resolution adopted May 25, 1896, and approved June 4, 1896, the mayor was authorized to have such alterations of the city maps as may from time to time be necessary, and to have files of the maps in the office of the city clerk replaced where missing; and

"Whereas, in pursuance of such resolutions Carl E. Von Leliva was employed by the mayor to perform said work at the rate of $3,000 per year; and

"Whereas, in my judgment as mayor, the necessity for such employment has ceased:

"Now, therefore, I, John H. Coyne, mayor of the city of Yonkers, do hereby order the discontinuance of the said employment, and do hereby discharge Carl E. Von Leliva as an employé of the city of Yonkers, to take effect December 15, 1905.

"Given under my hand this 12th day of December, 1905.
"[Signed] John H. Coyne, Mayor."

No action was ever taken by the common council upon this act of the mayor. By reason of sickness Von Leliva performed no services after September, 1907. He died on April 13, 1908, leaving a last will and testament, by which the plaintiff was appointed executor, and this action was brought to recover for the services rendered to the city by the said Von Leliva from December 1, 1905, to September 1, 1907, at the rate of $250 per month.

The questions submitted for decision are:

First. Whether Von Leliva was appointed by the mayor or by the common council?

Second. Did the notice given to him by Mayor Coyne on December 12, 1905, terminate the employment?

I can find no express authority in the charter of the city of Yonkers for the making of such an appointment by either the mayor or the common council; but I am satisfied that the common council had implied authority to make or authorize the making of such an appointment under subdivision 6 of section 6 of title 6 of the city charter, which gives the common council power "to provide for the care, custody and preservation of the public property, records and papers," and under subdivision 38, which authorizes said common council "to cause the boundaries of the city and the streets to be surveyed and maps thereof to be made." Under this general authority it seems to me that the common council had power to directly make an appointment of a suitable person to do the work that Von Leliva was appointed to perform, or to authorize the appointment or employment of such a person, either by the mayor or by a committee of the common council. I can find no provision of the city charter which authorizes, either expressly or by implication, the making of such an appointment by the mayor alone.

My conclusion, therefore, is that Von Leliva's appointment was made by the mayor, by the authority and under the direction of the common council, but for such time as in the judgment of the mayor

it might be necessary. The resolutions authorizing the mayor to make the appointment provide that the mayor shall "have such repairs made to the city maps *as may from time to time be necessary*," and "that his honor, the mayor, be empowered to have the files of maps in the office of the city clerk replaced where missing, repaired *where necessary*." This language seems to authorize the mayor to select and appoint a suitable person to do such work in respect of the city maps, and surveys *as the mayor might deem necessary*, and that the common council, by the adoption of the said resolutions, intended to give the mayor the authority to make such an appointment in his discretion, and when and for such time or times as he might think necessary, and that under the said resolutions the mayor had a right to appoint and remove at his pleasure the person who was to make the repairs to the said maps or replace them. The tenure of office was thereby left by the common council to the judgment of the mayor, and in the absence of any further resolution or action by the common council the mayor had a right to revoke the appointment of Von Leliva and terminate the hiring at any time.

Plaintiff claims that there is no provision of the charter giving the mayor power to remove Von Leliva, except by the consent or with the ratification of the common council, and there appears to be no provision in the charter giving the mayor such power; but my construction of the resolutions under which the appointment was made is that the Mayor was given express authority by said resolutions, not only to appoint Von Leliva to do certain work "as may from time to time be necessary," but also to remove him when the necessity for such work ended. In other words, that the mayor was thereby given general authority by the common council to have such work done as in his judgment might be necessary from time to time, and to make an appointment for that purpose, but leaving the tenure of office to the judgment of the mayor.

The resolution adopted by the common council in June, 1896, two years after Von Leliva was appointed, fixing his salary "at the rate of $3,000 per year, until otherwise ordered by the common council," does not, in my opinion, obligate the city for any fixed term of employment, but that the appointment by the mayor was for an indefinite term, and subject to revocation by him at any time. In Martin v. New York Life Insurance Company, 148 N. Y. 117, 42 N. E. 416, the court said:

"A general or indefinite hiring is prima facie a hiring at will, and if the servant seeks to make it out a yearly hiring the burden is upon him to establish it by proof. A hiring at so much a day, week, month, or year, no time being specified, is an indefinite hiring, and no presumption attaches that it was for a day even, but only at the rate fixed for whatever time the party may serve. A contract to pay $2,500 per year for services is not a contract for a year, but a contract to pay at the rate of $2,500 a year for services actually rendered, and is determinable at will by either party."

This is the law of this state, and under it, if I am right in my construction of the resolutions and the authority of the mayor thereunder, he had the right on the 12th day of December, 1905, to revoke the

appointment of Von Leliva without the action or approval of the common council, and the plaintiff is therefore entitled to recover for the services of his testator for half of the month of December, 1905, amounting to the sum of $125, with costs.